UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH THOMPSON and LYNN CARDINALE, on behalf of themselves and those similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) ) DIRECT GENERAL CONSUMER ) PRODUCTS, INC., et al., ) ) Defendants. ) | No. 3:12-cv-1093 Judge Sharp |

## MEMORANDUM

Pending before the Court are two motions in this putative collective action alleging violations of the Fair Labor Standards Act's overtime provisions. For the following reasons, the Court will GRANT IN PART Plaintiffs' Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, (Docket No. 12), and will GRANT IN PART Plaintiffs' Motion to Toll Statute of Limitations, (Docket No. 44).

## BACKGROUND

Defendants Direct General Consumer Products, Inc. and several related corporate entities (collectively, Direct General or the company) provide insurance and financial services to consumers in more than a dozen states concentrated in the southeastern United States. Direct General formerly employed Plaintiffs Elizabeth Thompson and Lynn Cardinale as insurance agents at two of its sales offices in Georgia and Florida. Thompson and Cardinale brought this putative collective action against Direct General on October 23, 2012, alleging that the company's overtime-compensation system violates the Fair Labor Standards Act, 27 U.S.C. §

1

201, *et seq*, in two ways. (Docket No. 1 at 9). First, they claim that Direct General did not properly account for commissions they earned when calculating their overtime pay, leading to underpayments. (*Id*.). Second, they say that Direct General's managers instructed them to work off the clock, and the company failed to pay them for the overtime hours they worked when this occurred. (*Id*.).

The Court will lay out the procedural history of this matter in greater detail than is its custom because the tangles in it bear on the pending motions. The Court's initial case-management order set discovery to end on December 21, 2013, required the parties to file dispositive motions by January 17, 2014, and scheduled trial for June 3, 2014. (Docket No. 34).

Thompson and Cardinale filed this conditional-certification motion under the FLSA's collective-action provisions, *see* 29 U.S.C. § 216(b), on December 4, 2012. (Docket No. 12). On December 21, 2012, the same day Direct General responded to Plaintiffs' conditional-certification motion, it also moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 21). The parties conducted limited discovery during the first half of 2013. In May 2013, Plaintiffs deposed two of the company's payroll-processing employees. In July 2013, Direct General deposed both named plaintiffs. The parties also exchanged written discovery. As the Court had not ruled on the conditional-certification motion, Plaintiffs moved on August 12, 2013, to toll the statute of limitations on their FLSA claims. (Docket No. 44).

On August 15, 2013, Direct General filed a "supplemental brief" to its previously filed response to Plaintiffs' conditional-certification motion. (Docket No. 49). In that brief, the company maintained that new evidence emerged in discovery that substantially narrowed Plaintiffs' commission claim. (*Id*. at 2–6). Direct General further said that the named Plaintiffs'

depositions undermined their claim that Direct General's corporate policy is to deny agents overtime pay. (*Id*.). Characterizing Direct General's supplemental brief as an unauthorized sur-reply, Thompson and Cardinale asked the Court either to strike it or to permit them to respond. (Docket No. 51 at 6). Along with the supplemental brief, Direct General simultaneously filed a motion urging partial summary judgment on Plaintiffs' commission claim. (Docket No. 46).

On October 10, 2013, the parties filed a joint motion to set aside the deadlines laid out in the January 23, 2013 case-management order, asking the Court to reschedule the pertinent dates after ruling on the pending motions. (Docket No. 63).

The Court ruled on several motions on November 25, 2013. (Docket Nos. 64 & 65). Specifically, the Court denied Direct General's dismissal motion, granted Plaintiffs' motion to respond to Defendants' supplemental brief, deferred ruling on Plaintiffs' conditional-certification and tolling motions pending that response, denied without prejudice Direct General's motion for partial summary judgment, and set aside the deadlines in the case-management order.

The Magistrate Judge entered an amended case-management order that set December 2, 2014, as the deadline for discovery, January 17, 2015, as the final date to file dispositive motions, and trial for June 9, 2015. (Docket No. 70). And Plaintiffs responded to Defendants' supplemental brief on December 16, 2013. (Docket No. 71).

Now, with that orderly procession in mind, the Court moves on to the substance of the pending motions.

**ANALYSIS**

*Conditional-certification motion*

Plaintiffs first ask the Court to conditionally certify under the FLSA a nationwide opt-in class of all current and former Direct General hourly-and-commissioned insurance agents who worked for Direct General in the past three years and were subjected to Direct General's allegedly improper commission-accounting and off-the-clock practices.

The FLSA permits an employee to maintain a collective action to recover compensation against any employer for and on behalf of himself and other employees similarly situated. 29 U.S.C. § 216(b). The Court determines whether plaintiffs are similarly situated using a two-step process. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877–78 (6th Cir. 2012). First, at the beginning of discovery, the Court applies "a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated." *Id*. at 877 (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). At this point, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009). If conditional certification is warranted, the Court may authorize the similarly-situated employees to be notified so that they may opt into the lawsuit and thus become party plaintiffs. *White*, 699 F.3d at 877–78.

The Court uses a "stricter standard" at the second stage, "more closely examin[ing] 'the question of whether particular members of the class are, in fact, similarly situated.'" *Id*. at 877 (quoting *Comer*, 454 F.3d at 547). At that later point, the Court reviews the evidence produced during discovery and determines whether the class is similarly situated and, if not, whether it

4

should be fully or partially decertified. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584–87 (6th Cir. 2009).

"The [FLSA] does not define 'similarly situated.'" *Id*. at 584. And while the Sixth Circuit has "not purport[ed] to create comprehensive criteria for informing the similarly-situated analysis," it has said that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id*. at 585. As well, plaintiffs are similarly situated if "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id*.

*Commission claim*

Plaintiffs initially alleged that Direct General failed to pay them complete overtime compensation because the company did not properly include commissions they earned into their regular rates of pay when computing their overtime rates of pay. (Docket No. 1 at 9). The FLSA requires that an employer who pays commissions to a non-exempt, hourly employee include those commissions in the calculation of the employee's regular rate of pay for the purpose of calculating overtime payments.[1] *See generally* 29 C.F.R. §§ 778.117 & 778.118. When Plaintiffs reviewed their paychecks, however, their overtime payments invariably came up short. Thompson and Cardinale submitted sworn affidavits narrating this allegation from 10 agents

---

[1] An example of the required calculation is instructive. Assume an individual who earns $10 per hour racks up $120 in commissions during a two-week pay period in which she works 88 hours. Her total compensation is the total of her regular compensation and her overtime compensation. Her regular compensation is her straight-time pay (88 hours at $10 per hour, or $880) plus her commissions ($120), which here amounts to $1000. To calculate her overtime compensation, however, her employer must first figure out her regular rate of pay, which is her regular compensation ($1000), divided by the total hours she worked during the period (88 hours); thus, her regular rate of pay is $11.36 per hour. Her overtime compensation is half of her regular rate of pay ($11.36 x 0.5, or $5.68) multiplied by the overtime-eligible hours she worked (8 hours), which amounts to $45.44. Adding her regular compensation ($1000) and her overtime compensation ($45.44), her total compensation for the pay period is $1045.44.

5

(including themselves) who worked at several Direct General locations in Florida, Georgia, Missouri, and Tennessee. (*See, e.g.*, Docket No. 12-4 at 2–3, 7–8, 18–19, 23–24, 33–34, 40, 48, 50).

Direct General explained in response that Plaintiffs misapprehended the law's requirements, wrongly assuming that the FLSA requires Direct General to immediately recalculate the regular rate of pay in the same pay period that commissions are earned. (Docket No. 16 at 10–11). To the contrary, Direct General asserted, "[i]f the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek," 29 C.F.R. § 778.119, an employer can make supplemental overtime payments once it has fully processed the commissions.

As discovery proceeded, Plaintiffs ultimately agreed that Direct General's commission-payment practices did not violate the FLSA in the manner they initially understood. (Docket No. 50-1 at 39). Still, Plaintiffs continue to maintain that Direct General does not properly factor commissions into their regular rates of pay when computing overtime, albeit for a different reason. Specifically, Thompson and Cardinale allege that Direct General shorts employees by including in the regular-rate-of-pay calculation all hours for which employees are compensated during a pay period—including Paid Time Off (PTO) hours, holiday hours, and bereavement time—but not figuring in the payments associated with those hours in calculating their regular rate. (Docket Nos. 57-2 at 4 & 57-3 at 5–6). The result is a mathematical certainty: when an employee's regular compensation remains steady but the number of hours by which that regular compensation is divided increases, the employee's regular rate of pay is reduced.[2]

---

[2] Applied to the previous footnote's example, if an individual took 8 PTO hours during the pay period, her regular rate of pay would be her regular compensation ($1000) divided by the total hours she worked

The posture of this case makes the conditional-certification question more awkward than usual, as some discovery has occurred that has required Plaintiffs to reshape their legal theory concerning the commission claim. Plaintiffs insist the Court should approach the certification issue formalistically, ignoring the arguments and evidence Direct General presents until the second stage of the certification process. The Court disagrees that it must turn a blind eye to critical developments in the viability of a party's legal claim. In this case, however, consideration of Plaintiffs' refined commission claim does not change the result of the similarly-situated analysis since, as Direct General admits, the formula it uses to calculate overtime compensation is the same across the corporation. (Docket No. 71-1 at 7–8). So even the narrower claim asserts that a uniform policy or practice results in a FLSA violation. Plaintiffs have made the "modest factual showing" to enable the Court to conditionally certify a nationwide opt-in class of all current and former Direct General hourly-and-commissioned insurance agents. *Comer*, 454 F.3d at 547 (internal quotation marks omitted).

Now, it may turn out that Plaintiffs' theory is wrong as a legal matter—because, for example, the Court ultimately decides the FLSA allows Direct General to dilute the denominator in the regular-rate-of-pay calculation by including PTO and other hours. Or it may be that Plaintiffs' theory is ultimately wrong as a factual matter—because, for example, Direct General offsets the higher number of hours that result from the inclusion of PTO and other hours by also increasing the amount of regular compensation (the numerator in the fraction) by the dollar amount it pays an employee for PTO and other hours. Those determinations, however, are best saved for another day, when discovery is complete and the chips, as they say, have fallen where

---

during the period, including the PTO hours (meaning 80 straight-time hours, 8 overtime hours, and 8 PTO hours, or 96 total hours). This results in a regular rate of pay of $10.42 per hour, which is lower than a regular rate of pay of $11.36 per hour without the PTO hours.

7

they may. For now, no doubt clouds the conclusion that the named Plaintiffs are similarly situated to the putative class members with respect to the alleged commission violation.

*Off-the-clock work claim*

In addition to their commission claim, Plaintiffs also allege that they and members of the putative class worked off the clock for Direct General, resulting in the company's failure to pay them overtime compensation. In their complaint, Thompson and Cardinale say that Direct General's insurance agents weren't allowed to record every hour they worked, and that managers and supervisors instructed insurance agents to clock out and keeping working in order to control overtime hours on employee time records. (Docket No. 1 at 9).

Sworn affidavits from 10 Direct General agents who worked in Florida, Georgia, Missouri, and Tennessee lend support to these claims. (Docket No. 12-4). Named Plaintiff Elizabeth Thompson, who worked in the company's College Park, Georgia location, for example, stated that she "was not allowed to record all of the hours [she] worked," and that supervisors told her "to make [her] overtime hours lower in the records but to keeping working and to get the job done." (*Id*. at 3). She added that "[e]ach of the agents [she] worked with was told the same thing and each of us would work off-the-clock." (*Id*.). Named Plaintiff Lynn Cardinale, who worked for the company in Ocala, Florida, told a similar story:

> During my employment I was not allowed to record all of the hours that I worked for Direct General. I would work through lunch, but was told to punch out. Donna, one of my supervisors, would e-mail me telling me to adjust my time closer to 40 hours. All agents that I knew experienced the same issues and were not paid for all hours that they worked.

(*Id*. at 8). Alma Rolland, a former Direct General insurance agent in Spring Hill, Florida, echoed the sentiment: "[O]ther agents and I were made to work off-the-clock. Our district managers

would constantly tell us to keep overtime low, but still get all the work done that had to be done. The district managers knew that we worked off-the-clock and pushed us to continue it." Indeed, nearly all other affiants said the same thing. (*Id*. at 16, ¶ 5 (John Pearson, who worked in Murfreesboro, Tennessee); 18, ¶ 5 (Raymond Hayes, who worked in Atlanta, Georgia); 24, ¶ 6 (Margaret Brookhouser, who worked in Tampa, Florida); 34, ¶ 6 (Rita Kay Jordan, who worked in Ocala, Florida); 48–49, ¶ 6 (Iraida Rolland, who worked in Spring Hill, Florida); 50–51, ¶ 6 (Victoria Blumer, who worked in St. Ann, Missouri). On this basis, Plaintiffs assert they are similarly situated to putative class members in that all fell victim to Direct General's FLSA-violating practice of making insurance agents work off the clock.

Direct General sees it differently, arguing conditional certification of this claim is inappropriate for two reasons. First, Direct General broadly maintains that Plaintiffs' allegations of off-the-clock work are too divergent to warrant conditional certification, as they will require the Court to review individual cases and particularized facts to assess Plaintiffs' claims. (Docket No. 16 at 13–15).

Differences in the circumstances in which Plaintiffs allegedly perform off-the-clock work do not destroy Plaintiffs' bid for conditional certification. Plaintiffs are similarly situated precisely because "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. Direct General's divergent-facts argument will be considered at the second phase, if and when Direct General moves to decertify the class.

Next, Direct General argues that Plaintiffs' allegations do not support companywide violations. It points out that Direct General's written policy is to comply with the FLSA. (Docket No. 18 at 3). Direct General also says that Plaintiffs don't claim knowledge of a policy

9

or practice common to all Direct General locations nationwide, (Docket No. 16 at 13), nor could they, since each Defendant entity "retains authority over all decisions affecting its sales agents," (Docket No. 18 at 2–3). On these grounds, Direct General concludes nationwide certification is inappropriate.[3]

While Plaintiffs have made a modest showing that they and other insurance agents were subjected to similar off-the-clock practices, Direct General is right that Plaintiffs have submitted no evidence to support conditional certification across the company. For one thing, Plaintiffs do not suggest they possess any knowledge of off-the-clock practices in any states outside of Florida, Georgia, Missouri, and Tennessee. For another, while Plaintiffs contend that Direct General admitted its insurance agents are subject to the same companywide policies, this admission pertains only to the company's written policy to comply with the FLSA. (*Id*. at 3).

To the contrary, and as noted, Direct General maintains that "[e]ach Defendant entity . . . retains authority over all decisions affecting its sales agents." (*Id*.). This structure of responsibility suggests that Plaintiffs are similarly situated to putative class members who work or worked for the Defendant entities that employ or employed the named Plaintiffs and individuals who submitted affidavits in support of the motion. As such, the Court will limit the scope of conditional certification to insurance agents who work or worked for these Defendant entities only. Plaintiffs may renew their conditional-certification motion if they later learn in discovery that expansion of the conditional class is warranted. *See Brasfield*, 257 F.R.D. at 644.

---

[3] Perhaps sensing the difficulty at this stage of escaping Plaintiffs' allegations altogether, Direct General alternatively asks the Court to limit the scope of the certified class to those districts in Georgia corresponding to Plaintiffs' affidavits. (Docket No. 16 at 15–17). But Plaintiffs submitted evidence that Direct General agents in at least four states allegedly perform off-the-clock work. Given that, the Court sees no basis to limit the certified class's geographic scope as Direct General suggests.

*Court-supervised notice*

In the same motion requesting conditional certification, Plaintiffs ask the Court to approve and direct the issuance of Plaintiffs' proposed notice to prospective class members. They also request that the Court order Defendants to produce the names and contact information of prospective class members so that notice may be sent to them.

The FLSA does not statutorily provide for notice to be sent to potential class members. *Compare* 29 U.S.C. § 216(b) *with* Fed. R. Civ. P. 23(c)(2). In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989), the Supreme Court explained that courts may nevertheless authorize plaintiffs to send opt-in notices to similarly-situated employees. Pursuant to *Sperling*, the Court exercises its discretion to approve notice to potential members of the above-described class and craft an opt-in procedure to allow them to join the action.

The parties spend many pages arguing over several fine points related to the substance of the competing notice and opt-in procedure each proposes. (Docket Nos. 12 at 16–20; 16 at 19–24; 49 at 7; 71 at 6–7). As Plaintiffs have indicated their willingness to consent to several contested issues, (Docket No. 32 at 5), the Court orders the parties to confer regarding the notice and opt-in procedure, and to submit to the Court for approval a Joint Proposed Notice and Opt-In Procedure within 7 days. If the parties are unable to agree, the Court will enter a Notice and Opt-In Procedure.

To facilitate notice, the Court further orders Defendants to disclose to Plaintiffs contact information for potential class members. The parties will detail the specific contact information to be disclosed in the Joint Proposed Notice and Opt-In Procedure; failing that, the Court will determine the specific contact information Direct General will disclose. Direct General shall provide to Plaintiffs the relevant contact information of putative class members within 7 days of

the entry of either the Joint Proposed Notice and Opt-In Procedure or the Court's version of it. The Magistrate Judge will decide any disputes regarding that disclosure.

*Tolling motion*

Plaintiffs' second pending motion asks the Court to equitably toll the statute of limitations applicable to their FLSA claims for potential opt-in plaintiffs as of December 4, 2012, the date Plaintiffs filed their conditional-certification motion. (Docket No. 44). They maintain that putative class members have seen their claims erode while the conditional-certification motion was pending before the Court. (Docket Nos. 44-1 & 59). Direct General responds that the procedural delays involved in this case do not justify equitable tolling. (Docket No. 53).

Under the FLSA, a cause of action accrues each regular payday that immediately follows the work period for which an employee claims compensation. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008). Employees have two years after the cause of action accrues (or three years if it arises from an employer's willful violation) to "commence" an FLSA collective action to recover compensation owed to them. 29 U.S.C. § 255(a). An action "commences" when the complaint is filed *only* for employees named as party plaintiffs in a complaint. *Id*. § 256(a). For everyone else, an action doesn't "commence" until a putative class member submits to the Court a written consent to join the collective action. *Id*. § 256(b). As a result, the statute-of-limitations clock continues to run—and unpaid-compensation claims may continue to shrink—until a putative class member consents to join the suit.

Equitable tolling enables a court, in its discretion, to extend the statute of limitations on a case-by-case basis to prevent inequity, *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998), if a party has diligently pursued his rights and some extraordinary circumstance prevented timely filing, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–32 (2013). "[A] nonjurisdictional

federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990)). The Sixth Circuit has held that the statute-of-limitations period that applies to FLSA actions is not jurisdictional. *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (holding that 29 U.S.C. § 255 "establishes only a procedural limitation period"). More, it has found equitable tolling appropriate in FLSA actions. *See, e.g.*, *Hughes*, 542 F.3d at 188–89.

> Five factors help determine whether equitable tolling applies in a particular case:
>
> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.* at 187 (internal quotation marks omitted). This list "is not necessarily comprehensive, and not all factors are relevant in all cases." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (internal quotation marks omitted); *see also Dixon v. Gonzales*, 481 F.3d 324, 331 (6th Cir. 2007) (holding equitable tolling appropriate where plaintiff did not meet three of the five factors). The Sixth Circuit has "emphasized that absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Allen*, 366 F.3d at 401–02 (internal quotation marks and alteration omitted).

Equitable tolling is appropriate here. To begin with the first factor, it appears that the vast majority of potential opt-in plaintiffs lacked actual notice of this case. Direct General does not argue otherwise, but nonetheless insists that potential opt-in plaintiffs could have still joined in or brought their own lawsuit. The Court is not persuaded. As another court pointed out, the company's argument "ignores the realities of FLSA claims" and "go[es] against ever applying

13

equitable tolling to a potential opt-in." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 861 (N.D. Ill. 2013).

Plaintiffs initially asked the Court to conditionally certify the class and supervise notice to its members more than 15 months ago. Time passed, in part, because a bevy of motions had to be addressed prior to Plaintiffs' conditional-certification motion, such as Direct General's dismissal and partial-summary-judgment motions, as well as Plaintiffs' motion to strike Defendants' supplemental brief. Time also passed because the Court strayed from its usual practice of expeditiously ruling on a fully briefed motion.

The FLSA's opt-in mechanism necessarily involves a lapse of time between the date a collective action is filed and the date an opt-in plaintiff files a consent form to participate in it. *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007). Here, though, through no fault of the existing or potential plaintiffs, between 40 and 60 percent of some class members' claims may have evaporated while the conditional-certification motion was pending. Aggressive motion practice and the Court's heavy docket are not grounds to extinguish putative class members' claims. To characterize this interval as "simple procedural delay," as Direct General does, is simply wrong. (Docket No. 53 at 2). A 15-month delay in ruling on a conditional-certification motion effectively precludes potential opt-in plaintiffs from getting actual notice. This is an extraordinary circumstance that strongly supports equitable tolling.

Moving on, the Court concludes that the vast majority of putative class members also lacked constructive notice of this case. Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have." Black's Law Dictionary 950 (9th ed. 2009). The exercise of reasonable care or diligence would not have made putative class members aware of this case or the operation of the FLSA's limitations period on their claims. As noted, notice has

not issued due to delays potential opt-in plaintiffs did not cause. And more, Direct General retained possession of the complete list of putative class members, which stills the claim that potential opt-in plaintiffs should have known about the lawsuit just because some of their current or former coworkers did.

Although the Sixth Circuit has said in an unpublished opinion that the existence of the FLSA statute on its own gives "plaintiffs constructive notice of . . . their rights under the FLSA and of the deadline for filing suit," *Archer v. Sullivan County*, 129 F.3d 1263, 1997 WL 720406, at *4 (6th Cir. 1997) (table), that case's rationale is unpersuasive. First off, the Sixth Circuit implicitly rejected it in *Hughes*. In that case, the court found that equitable tolling was appropriate "in light of the five factors outlined above"—one of which was the petitioner's lack of constructive notice—even though the FLSA was certainly on the books as the clock ticked on the petitioner's claims. 542 F.3d at 188.

More, *Archer* suffers from several logical deficits. As one district court observed, if the mere existence of a law is enough to give constructive notice, then the equitable-tolling inquiry into notice-related factors is meaningless, since *Archer* assumes that every plaintiff has constructive notice of all relevant statutory requirements. *Baden-Winterwood*, 484 F. Supp. 2d at 828. And this raises a related problem: if the existence of the FLSA alone informs individuals of their statutory rights and obligations, why send notice to potential opt-in plaintiffs at all? *Id*.

The Court declines to follow *Archer*. Where, as here, no facts support a conclusion that potential opt-in plaintiffs had constructive notice of the FLSA's limitations period, "equity demands that this Court give little weight to the fact that the mere existence of the FLSA placed Plaintiffs on constructive notice of [it]." *Baden-Winterwood*, 484 F. Supp. 2d at 828; *see also Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 847 (S.D. Ohio 2013).

15

As to the third factor, diligence, the failure of potential opt-in plaintiffs who lacked knowledge of this action to opt into it, quite sensibly, does not indicate a lack of diligence. The measure of diligence is whether a potential opt-in plaintiff joined a collective action when given the opportunity. *Baden-Winterwood*, 484 F. Supp. 2d at 828. In this case, a 15-month delay in certifying the class and issuing notice to it—a delay entirely unrelated to any potential opt-in plaintiff's action or inaction—effectively precluded the ability of putative class members to join this case. This factor tilts in Plaintiffs' favor.

The Court next considers whether equitable tolling will prejudice Direct General, concluding that it will not. Plaintiffs filed this suit in October 2012 as a nationwide collective action, laying out their legal theories of Direct General's statutory violations. Direct General has known the scope of its alleged liability since that time. If anything, the company's exposure has been reduced, both because Plaintiffs' slimmed-down commission claim necessarily has less potential value and because the Court limited the scope of the conditionally certified class to employees of a subset of the Defendant entities. Tolling the limitations period for most putative class members will not prejudice Direct General.

To conclude with the final factor, Plaintiffs' ignorance of the filing deadline was reasonable given that they neither knew about this lawsuit nor of Direct General's alleged violations. Direct General counters that it made no effort to conceal its pay practice in opposing conditional certification, but doesn't elaborate any further. (Docket No. 53 at 9). Standing alone, the Court is hard-pressed to understand what this dim statement means. The Court concludes that absent actual notice or some plausible means to learn of the tick-tock of the FLSA clock, Plaintiffs' ignorance of the filing deadline is reasonable. To tie up the five-factor analysis, equitable tolling is appropriate in this case.

16

That said, the Court will limit Plaintiffs' tolling request in two ways. First, the Court agrees with Direct General that some potential opt-in plaintiffs must be carved out from the tolling order. (Docket No. 53 at 8 n.1). Specifically, Direct General identifies several individuals to whom Plaintiffs' counsel sent advertising letters informing them about this lawsuit; Plaintiffs admit that approximately 100 current or former Direct General insurance agents received such letters. (Docket No. 59 at 3–4). While precertification communications with potential class members are generally unobjectionable, *see, e.g.*, *Heibel v. U.S. Bank Nat'l Ass'n*, 2012 WL 4463771, *6–7 (S.D. Ohio Sept. 27, 2012); *Struck v. PNC Bank N.A.*, 2013 WL 571849, at *5 (S.D. Ohio Feb. 13, 2013), it undermines Plaintiffs' claim that the recipients of these letters lacked actual notice. As a result, the Court will not toll the limitations period for potential opt-in plaintiffs who received precertification mail communications from Plaintiffs' counsel.

The Court will also limit the durational scope of Plaintiffs' tolling motion. Plaintiffs ask the Court to toll the limitations period as of December 4, 2012, the date Plaintiffs filed their conditional-certification motion. But even in the best case scenario—if none of the delays that caused 15-month interval had occurred—the earliest the Court could have conditionally certified the class is some time after the parties fully briefed the motion. The FLSA clock certainly would not have stopped running before then. With that in mind, the Court will toll the limitations period for potential opt-in plaintiffs as of January 18, 2013, the date Plaintiffs filed their reply in support of the conditional-certification motion. That alteration more closely comports with the regular course of litigation and reflects the lapse of time that the FLSA's opt-in mechanism necessarily involves.

**CONCLUSION**

For the reasons stated, the Court will GRANT IN PART Plaintiffs' Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, (Docket No. 12), but will limit the scope of conditional certification to insurance agents who work or worked for the Defendant entities that employ or employed the named Plaintiffs and individuals who submitted affidavits in support of the conditional-certification motion.

The Court further will ORDER the parties to confer regarding the notice and opt-in procedure and to submit to the Court for approval a Joint Proposed Notice and Opt-In Procedure within 7 days. If the parties are unable to agree on a Joint Proposed Notice and Opt-In Procedure, the Court will enter a Notice and Opt-In Procedure. The Court also will ORDER Defendants to disclose to Plaintiffs contact information for all putative class members within 7 days of the entry of the aforementioned Notice. The Court will refer any disputes regarding the latter disclosure to the Magistrate Judge.

Finally, the Court will GRANT IN PART Plaintiffs' Motion to Toll Statute of Limitations, (Docket No. 44), tolling the FLSA statute of limitations for potential opt-in plaintiffs (with the exception of those who received precertification mail communications about this lawsuit from Plaintiffs' counsel) from January 18, 2013, until the date of the entry of this order.

An appropriate Order will be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE