UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH THOMPSON and ) | |
| LYNN CARDINALE, on behalf of ) | |
| themselves and those similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:12-1093 |
| ) | Judge Sharp |
| DIRECT GENERAL CONSUMER ) | |
| PRODUCTS, INC., et. al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM

Pending before the Court in this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, are Defendants' Motion to Dismiss (Docket No. 105) and Plaintiffs' Motion for Partial Summary Judgment (Docket No. 107). Those Motions have been fully briefed by the parties, the Court heard oral argument on the same on April 10, 2015, and the Court now considers them in turn.

### I. Defendants' Motion to Dismiss

By way of this Motion, Defendants seek dismissal of 86 opt-in Plaintiffs. That Motion is based upon the following procedural history.

After this collective action had been conditionally certified, the Court, in accordance with a Joint Motion filed by the parties, set the opt-in period to begin on April 2, 2014, and close on June 2, 2014. At the end of this period, the class consisted of 146 opt-in plaintiffs, plus the 2 named Plaintiffs.

Subsequently, the parties entered into a stipulation setting forth the dates by which they

1

would respond to one another's written discovery requests. The Court adopted the stipulation by Order dated August 13, 2014, making Plaintiffs' responses due by October 1, 2014, and Defendants' responses due by October 22, 2014. As those deadlines neared, Plaintiffs' counsel requested that the opt-in Plaintiffs be allowed to serve their responses on a rolling basis, starting on October 1, 2014, rather than requiring Plaintiffs to serve all 146 sets of responses by that deadline. Defendants agreed.

Despite the accommodation, however, only 28 of the 146 opt-in plaintiffs had served responses to the written discovery requests by October 31, 2014, prompting Defendants to file a Motion to Compel. That Motion was granted on December 18, 2014, when the Court ordered "[a]ll opt-in Plaintiffs who intend to participate in this lawsuit [to] serve responses to Defendants' discovery requests on or before January 15, 2015." (Docket No. 104 at 1).

As of January 15, 2015, 15 opt-in Plaintiffs had filed notices to withdraw their consents, leaving 131 opt-in Plaintiffs remaining in the case. Of these 131 opt-in Plaintiffs, only 41 had served answers to their discovery requests by the court-ordered deadline. It is the remaining 86 opt-in Plaintiffs that did not respond to the discovery request that Defendants now move to dismiss.

Defendants' Motion is based on Rules 37 and 41 of the Federal Rules of Civil Procedure. Rule 37 provides that if a party "fails to obey an order to provide or permit discovery," a "court where the action is pending may issue further just orders," including an order "dismissing the action or proceeding in whole or in part[.]" FED. R. CIV. P. 37(b)(2)(A). Rule 41 provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).

In response to Defendants' Motion, Plaintiffs concede that dismissal is appropriate as to 85

2

of the 86 opt-in Plaintiffs. They object to dismissal of opt-in Plaintiff Margaret Brookhouser because she responded to the discovery request on January 25, 2015, and explain that her delay in responding was due to "the fact she is homeless and had a difficult time receiving and then completing the answers to the discovery requests." (Docket No. 111 at 2 n.1). As for the others, Plaintiffs argue that the lesser sanction of dismissal without prejudice is appropriate and in keeping with the remedial purposes of the FLSA. They also argue that dismissal without prejudice is appropriate because the Order warning the opt-in Plaintiffs to respond referred to "this lawsuit."

At the hearing on April 10, 2015, the Court stated that Ms. Brookhouser would not be dismissed because she responded, albeit ten days late. As for the others, the Court stated that it was inclined to dismiss those opt-in Plaintiffs with prejudice, but would consider the matter further. Having done so, the Court finds that dismissal with prejudice is, in fact, the appropriate sanction.

In deciding whether dismissal without prejudice is appropriate, the Court is guided by four factors: "(1) [w]hether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 363 (6th Cir. 1999). All of those factors the finding that dismissal with prejudice is the appropriate sanction under the facts of this case.

First, the non-responsive opt-in Plaintiffs acted wilfully and with fault because they did not comply with the parties' stipulated deadline for the filing of discovery responses, nor comply with the Court's Order that they serve responses by January 15, 2015, thus "showing a lack of interest in the action[.]" Williams v. Select Specialty Hosp., 2010 WL 83103, at *3 (M.D. Tenn. Jan. 7,

3

2010).  Second, Defendants will be prejudiced by any lesser sanction because they " face the prospect of defending a future action based on allegations which it has attempted to defend against in this action." Id.  Third, the non-responsive opt-in Plaintiffs were ordered to provide responses by a date certain, and while the Order referred to "this lawsuit" and did not specifically state that dismissal could follow, litigants and counsel are expected to respect the litigation process and "should already be aware of the requirement to follow court orders or seek to have the orders changed." Manning v. Diversified Collection Serv. Inc., 1010WL 1438735, at *2 n.2 (S.D. Ohio April 9, 2010).  Fourth, the lesser sanction of dismissal without prejudice is not appropriate because that approach would allow the non-responsive Plaintiffs to simply "re-file in district court and start the process all over again, just as though nothing had ever gone wrong." Bay Corrugated Container, Inc. v. Gould, Inc., 2015 WL 1529145, at *5 (6th Cir. April 7, 2015).

Contrary to Plaintiffs' assertion, dismissal without prejudice does not undermine the remedial purposes of the FLSA.  Rather, it underscores the responsibility of litigants to comply with the Federal Rules of Civil Procedure and Orders issued by the Court.  Accordingly, Defendants' Motion to Dismiss will be granted with respect to the opt-in Plaintiffs who did not fulfill their discovery obligations and those Plaintiffs, with the exception of Ms. Brookhouser, will be dismissed from this action with prejudice.

## II. Plaintiffs' Motion for Partial Summary Judgment

In this action, Plaintiffs allege that Defendants violated the FLSA by (1) failing to pay them for off-the-clock work, and (2) failing to properly calculate commissions into their regular rate of pay when computing overtime.  Plaintiffs' partial summary judgment motion is directed solely to

4

the issue of liability with respect to their commission calculation claim,[1] and is based on the following undisputed facts.

Direct General is headquartered in Nashville, Tennessee, and has Claims Centers in Dallas, Texas, and Tampa, Florida, and a Customer Service Center in Baton Rouge, Louisiana. It provides consumers with insurance and financial services, including Auto and Life Insurance, Prepaid Debit Cards, and Roadside Assistance.

Plaintiff, Elizabeth Thompson ("Thompson"), was employed by Direct General from May 23, 2011, to August 7, 2012, as an Insurance Agent at a storefront sales office located in College Park, Georgia. Plaintiff, Lynn Cardinale ("Cardinale"), was also employed by Direct General as an Insurance Agent, working in a storefront sales office located in Ocala, Florida, from March 2004 to August 2011. Direct General paid Thompson, Cardinale, and all of its Insurance Agents in the same manner: a combination of hourly pay and commissions, determined by the number and type of insurance policies they sold.

Historically Direct General paid two types of sales commissions to Insurance Agents: (1) commissions on net premiums (premiums for policies sold, less a prorated premium for policies canceled during the month); and (2) commissions on debit card sales. Commissions for net written premiums were paid to sales agents on the second pay date of the month following the end of the month in which the premium was paid. The process utilized to calculate the overtime rate is the same for both types of commissions. Because, however, Defendants cannot calculate the

---

[1] Even though 13 Defendants are named in this action, in light of this Court's Order conditionally certifying the class in the case, Plaintiffs claims are limited to the 3 employers for whom they worked, specifically, Direct General Insurance Agency, Inc., Direct General Agency of Georgia, Inc., and Direct General Insurance Agency of Tennessee, Inc.

5

commissions due until the month-end accounting is completed, net written premium commissions are paid to sales agent on the second pay day of the month following the end of the month in which the premium or product was sold.

While Insurance Agent commissions are earned monthly, Defendants utilize biweekly pay periods. The formula for allocating Insurance Agent commissions to each pay period is calculated as follows: the amount of commissions earned in one month multiplied by 12 months per year, then divided by 26 pay periods per year. The result of that calculation is the commission attributable to each associated bi-weekly period.

Once the pay period commission is calculated, Defendants look back to the hours worked during the pay periods that most closely correspond to the dates of the sales for which the commissions are being paid (usually the preceding 2-3 pay periods) to arrive at an adjusted commission amount. The adjusted commission amount is then divided by the total hours during the pay period to yield a base commission/hour rate. For purposes of overtime pay, the base commission/hour rate is multiplied by .5, resulting in the Agent being paid 1.5X the commission/hour rate for commissions attributable to the overtime hours worked during the period in which relevant sales were made.

The key to Plaintiffs' commission claim in this case is that the method used in the regular rate calculation adds hours that are not actually worked by the Agents (including paid time off (PTO) and "other hours" such as holidays and bereavement time), yet Defendants fail to include the payments made for such unworked hours in their regular rate calculation. According to Plaintiffs, the effect of this method of calculation is that the divisor in the regular rate calculation is artificially inflated, while the numerator (the payments received by Plaintiffs for non-overtime hours) are not

6

Case 3:12-cv-01093  Document 121  Filed 05/18/15  Page 6 of 12 PageID #: 2488

similarly increased.

By way of example, Plaintiffs submit the following examples which are based upon an agent earning $1,000.00 in combined hourly pay and commissions for which he or she worked 88 actual hours and used 8 hours of PTO:

| DEFENDANTS' METHOD OF CALCULATION | CALCULATION INCLUDING AMOUNT PAID FOR PTO |
|---|---|
| $1,000 / 96 worked and unworked hours = $10.42 regular rate $\times$ .5 = $5.21 overtime rate $\times$ 8 hours overtime = $41.67 overtime premium | $1,000 / 88 worked hours = $11.36 regular rate $\times$ .5 = $5.68 overtime rate $\times$ 8 hours overtime = $45.44 overtime premium |

Plaintiffs concede that an employer may elect to include or exclude payments made for time not worked when calculating an employee's rate of pay, but argue that an employer may not include time not worked in calculating the regular rate of pay, while simultaneously excluding the payments associated with such hours. Based upon the undisputed facts in this case, the Court agrees, and finds that the method utilized by Defendants artificially reduced its Insurance Agents' regular rate of pay which, in turn, improperly reduced overtime payments. Prior to explaining the reason for that conclusion, a couple of preliminary matters must be addressed.

Defendants argue that "Plaintiffs' Motion must be denied because they have failed to show that each Plaintiff was actually affected by the Defendants' allegedly improper overtime recalculation method," and point out that "[t]he only time there would be a difference between Defendants' method and Plaintiffs' proposed method would occur in workweeks in which an Agent used PTO hours, but still qualified for overtime compensation by working over 40 hours." (Docket No. 114 at 7-8). At the hearing, Defendants' couched this argument as being one of Article III

7

standing, asserting that many (if not most) of the Agents would have no injury in fact because they did not often utilize PTO during weeks they worked overtime.

The Court's power to adjudicate is limited to "cases and controversies" under Article III. U.S. Const., art. III, § 2, cl. 1, and "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The Supreme Court has defined standing generally as "the question of . . . whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing must exist at the time of filing of the complaint, and "does not have to be maintained throughout all stages of the litigation." Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 524 & 526 (6th Cir. 2001).

Defendants' argument is a non-starter because whether a particular opt-in Plaintiff used paid time-off and worked overtime during a particular workweek goes to whether that particular individual may be entitled to damages – it does not go to the issue of whether the Court has the power to decide that issue. This case, after all, is a collective action under the FLSA which provides that "[a]n action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(d). While there is no "comprehensive criteria for informing the similarly situated analysis," plaintiffs are similarly situated when their claims [a]re unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." O'Brien v. Ed Donnelly Ent., Inc., 575 F.3d 567, 585 (6th Cir. 2009); see also, Sutton v. St. Jude Med. S.C., Inc., 419 F.3d 568, 570 (6th Cir. 2005) (for purposes of Article III's standing requirement, "[t]he class representative must allege an individual,

8

personal injury in order to seek relief on behalf of himself or any other member of the class"); Nat'l Rifle Ass'n v. Magaw, 132 F.3d 272, 278 n.4 (6th Cir. 1997) ("as long as one plaintiff meets the requirements of Article III, the court can adjudicate the issues raised in the complaint").

Defendants' remaining argument under the heading that Plaintiffs cannot each show they were affected by Defendants' recalculation of overtime also goes nowhere. They argue that "Plaintiffs are relying on a misplaced application of the now obsolete 'subject to' liability theory." (Docket No. 114 at 9). Citing Auer v. Robbins, 519 U.S. 452, 459 (1997), Defendants assert that "[i]n FLSA cases involving 'subject to' liability, plaintiffs were able to prevail by showing nothing more than a 'theoretical possibility of wage violations by their employer,'" and cite Baden-Winterwood v. Life Time Fitness, Inc., 566 F.3d 618, 627 (6th Cir. 2009) for the proposition that "'subject to' liability applie[s] only in the limited context of improper salary deductions." (Docket No. 114 at 9). Even if all of this is true, however, it only address what proof might be necessary to show entitlement to damages, not whether the Court can address the issue in the context of a collective action.

Turning to the merits, the single issue on which Plaintiffs seek partial summary judgment is whether Defendants' method of re-calculating non-exempt Insurance Agents' overtime pay to include commission payments violates the FLSA because it includes PTO hours, but excludes the compensation Plaintiffs receive for those hours. The Court finds that it does.

The FLSA generally provides that employers may not require employees to work more than 40 hours per workweek, unless those employees receive overtime compensation at a rate of not less than one-and-one-half times their regular pay. 29 U.S.C. § 207(a)(1). "Calculation of the regular rate is the linchpin of the FLSA overtime requirement[.]" O'Brien v. Town of Agawam, 350 F.3d

9

279, 294 (1st Cir. 2003).

"The method of calculating the regular rate is as follows: '[t]he regular rate under the Act is a rate per hour,' though '[t]he Act does not require employers to compensate employees on an hourly rate basis[.]" Sharpe v. Cureton, 319 F.3d 259, 270-71 (6th Cir. 2003) (quoting, 29 C.F.R. § 778.109). "'The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" Id.; see also, Chavez v. City of Albuquerque, 630 F.3d 1300, 1313 (10th Cir. 2011) (holding "that the FLSA hourly regular rate is calculated by dividing the relevant weekly compensation by the actual hours worked," and stating that "DOL's interpretation – that the proper divisor is hours worked – is consistent with the statutory language"); Wethington v. City of Montgomery, 935 F.2d 222, 227 (11th Cir. 1991) ("the regular rate must be calculated from actual hours worked").

PTO hours, by definition, are not hours actually worked. Nevertheless, and as Defendants point out, the Regulations state that payments "made for occasional periods when the employee is not at work" such as for PTO "may be excluded from the regular rate of pay," 29 C.F.R. § 778.218, and whether to include payment for PTO is within the discretion of the employer, see Featsent v. City of Youngstown, 70 F.3d 900, 905 (6th Cir. 1995).

It does not follow, however, that an employer who includes PTO hours in calculating overtime may also exclude the payments for those hours in making the calculation. After all, the Regulations indicate that the regular hourly rate is to be determined by dividing the "total remuneration" for the period. 29 C.F.R. 778.109.

The FLSA is remedial in nature and is to be broadly construed to effectuate its purpose. See

10

Keller v. Miri Microsystems, LLC, 781 F.3d 779, 806 (6th Cir. 2015). "[P]arties cannot avoid the purposes of the FLSA by designating a fictitious regular rate," Chavez, 630 F.3d at 1305, nor may they utilize "ingenious mathematical manipulations," or "compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes," Walling v. Helmerich & Payne, 333 U.S. 37, 41-42 (1944). Intentional or not, that was the effect of Defendants' practice here. By adding PTO hours into the divisor, but not adding the payments made for such hours into the numerator when calculating overtime hours, the payments for those overtime hours was artificially decreased.

A recent opinion, decided after the oral argument in this case, supports the Court's conclusion. In Vasquez v. TWC Admin., LLC, 2015 WL 2084486 (C.D. Cal. May 4, 2015), the court was presented with the interplay of Sections 778.109 and 778.218(a) where defendant argued that the former "was intended to prevent an employer 'from exclud[ing] PTO payments from total remuneration yet, at the same time includ[ing] PTO hours in hours actually worked[.]'" Id. at *4. After noting "the paucity of authority bearing on this issue," the court found that "what little case law there is bolsters defendants' contention that it *is permissible to include compensated non-work hours in the regular rate calculation, so long as the paid tied to those hours is also incorporated into that calculation*." Id. at 6 (emphasis added). The court ultimately "conclude[d] that defendants cannot be held liable under the FLSA . . . for their practice of counting PTO hours in *both the enumerator and denominator of regular rate calculations*." Id. at 7 (emphasis added).

Accepting that it is permissible to include PTO hour in the hours actually worked calculation, this Court finds that it is not permissible under those circumstances to exclude the payments for those hours in calculating overtime. That is, if the hours are include, so, too, must the payment made

11

be included.

Given the undisputed facts, the Court concludes that Defendants miscalculated the regular rate of pay, and resulting overtime pay, by including hours for time not worked in calculating same, while simultaneously excluding the pay received for such hours. As a consequence, summary judgment on this issue of liability is appropriate.

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss will be granted, except as it pertains to opt-in Plaintiff Margaret Brookhouser. Plaintiffs' Motion for Partial Summary Judgment on the issue of liability for the improper calculation of overtime hours will be granted.

An appropriate Order will be entered.

*/s/ Kevin H. Sharp*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE